NO. 29503

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


FREDERICK H. K. BAKER, JR., and HAUNANI Y. BAKER,
Appellants-Appellants,
v.
DEPARTMENT OF HAWAIIAN HOME LANDS,
MICAH A. KANE, BILLIE BACLIG, MILTON PA,
TRISH MORIKAWA, MAHINA MARTIN, FRANCIS LUM,
MALIA KAMAKA, PERRY ARTATES, STUART HANCHETT,
DONALD S.M. CHANG, and TO ALL TO WHOM IT MAY CONCERN,
Appellees-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-0371)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Foley, J., and Circuit
Judge Steven S. Alm, in place of Fujise,
Leonard, Reifurth, and Ginoza, JJ., all recused)


In this secondary appeal involving a canceled lease,
Appellants-Appellants Frederick H. K. Baker, Jr. (Baker) and
Haunani Y. Baker (collectively, Appellants) appeal from the
Judgment filed on November 7, 2008 in the Circuit Court of the
Third Circuit[1] (circuit court).  The circuit court entered
judgment in favor of Appellees-Appellees Department of Hawaiian
Home Lands (DHHL), Micah A. Kane, Billie Baclig, Milton Pa, Trish
Morikawa, Mahina Martin, Francis Lum, Malia Kamaka, Perry
Artates, Stuart Hanchett, and Donald S.M. Chang (collectively,
Appellees) and against Appellants.

On appeal, Appellants contend:

(1)  The cancellation of Baker's Agricultural Lot Lease
No. 5107 (Lease) as the result of his default on his loan (farm
loan) from DHHL's Hawaiian Home Farm Loan Fund violates the

---

[1]  The Honorable Glenn S. Hara presided.

intent, spirit, purpose of, and applicable rights/duties under the Hawaiian Homes Commission Act, 1920 (HHCA).[2]

(2)   The Hawaiian Homes Commission (the Commission) failed to consider Appellants' evidence at the September 21, 2006 contested case hearing and therefore based its decision on an incomplete record, in violation of Hawai'i Administrative Rules (HAR) §§ 10-5-41(a) (1998) and 10-5-42(a) (1998).

(3)   Deputy Attorneys General George K.K Kaeo, Clayton Lee Crowell (Crowell), and Kumu B. Vasconcellos (collectively, Deputy AGs) misrepresented that the civil complaint against Baker would be dismissed and the parties permitted to resolve the dispute informally, to Baker's detrimental reliance;

(4)   DHHL was not authorized to charge 8-3/4% annual interest on Baker's farm loan at the time Baker entered into the loan agreement.

(5)   Appellants had no notice that Appellees required strict performance of the contract terms or of the impending default absent prompt payment of arrearage.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Appellants' points of error as follows:

(1)   Appellants contend the cancellation of the Lease as a result of Baker's farm loan default violates the intent, spirit, and purpose of the HHCA.   Appellants further contend that under the HHCA, Baker has vested rights and Appellees have fiduciary duties, which Appellees breached by canceling the Lease.

Appellees respond to Appellants' argument as follows:

> Section 101, HHCA, does not provide for an "inherent" right to occupy Hawaiian homelands [sic].   A lessee must still comply with other requirements of the HHCA and the

---

[2]   The HHCA is part of the Hawai'i Constitution and can be found in Hawaii Revised Statutes (HRS), vol. 1, at 261-308 (2009 Repl.).

> terms of the homestead lease, including payment of
> loans. . . . Moreover, cancellation of Mr. Baker's Lease
> does not affect the general rights of native Hawaiians to
> the land. The Department will award the premises under a
> new lease to the next eligible native Hawaiian on the
> Department of Hawaiian Home Lands' waiting list.

We agree with Appellees. In <u>Office of Hawaiian Affairs v. Housing & Community Development Corp. of Hawai'i</u>, 117 Hawai'i 174, 177 P.3d 884 (2008), <u>rev'd on other grounds</u>, <u>Hawaii v. Office of Hawaiian Affairs</u>, __ U.S. __, 129 S. Ct. 1436 (2009), the Hawai'i Supreme Court noted:

> The Hawaiian Homes Commission Act was enacted by the
> United States Congress (Congress) to set aside over 200,000
> acres of ceded lands for exclusive homesteading by native
> Hawaiians. H.R. Rep. No. 839, 66th Cong., 2d Sess. 4
> (1920). As a condition of statehood, the United States
> required the State to adopt the act as a provision of the
> state constitution, *see* Hawai'i Const. art. XI, § 2 (1959)
> (renumbered art. XII, § 2 (1978)).

<u>Office of Hawaiian Affairs</u>, 117 Hawai'i at 182 n.5, 177 P.3d 892 n.5. The Hawai'i Supreme Court further noted that "the primary purpose of the HHCA was the rehabilitation of native Hawaiians" on lands given the status of Hawaiian home lands. <u>Ahuna v. Dep't of Hawaiian Home Lands</u>, 64 Haw. 327, 336, 640 P.2d 1161, 1167 (1982).

HHCA §§ 207 and 208 expressly grant DHHL the power to lease tracts of Hawaiian home lands to native Hawaiians and stipulate conditions for these leases, including the lessee's payment of taxes. Should a lessee allegedly violate these conditions, § 210 permits DHHL to conduct a hearing to determine whether to cancel the lessee's lease:

> §210. **Cancellation of leases.** Whenever the
> department has reason to believe that any condition
> enumerated in section 208, or any provision of section 209,
> of this title has been violated, the department shall give
> due notice and afford opportunity for a hearing to the
> lessee of the tract in respect to which the alleged
> violation relates or to the successor of the lessee's
> interest therein, as the case demands. If upon such hearing
> the department finds that the lessee or the lessee's
> successor has violated any condition in respect to the
> leasing of such tract, the department may declare the
> lessee's interest in the tract and all improvements thereon
> to be forfeited and the lease in respect thereto canceled,
> and shall thereupon order the tract to be vacated within a
> reasonable time.

Section 214 further grants DHHL the power to make loans from revolving funds to any lessee or native Hawaiian who holds a lease under the HHCA. Section 215(2) stipulates conditions for these loans:

§215. Conditions of loans.

. . . .

(2) The loans shall be repaid in periodic installments, such installments to be monthly, quarterly, semiannual, or annual as may be determined by the department in each case. The term of any loan shall not exceed thirty years. Payments of any sum in addition to the required installments, or payment of the entire amount of the loan, may be made at any time within the term of the loan. All unpaid balances of principal shall bear interest at the rate of two and one-half per cent a year for loans made directly from the Hawaiian home loan fund, or at the rate of two and one-half per cent or higher as established by law for other loans, payable periodically or upon demand by the department, as the department may determine.

When a borrower breaches these conditions, § 216 permits DHHL to conduct a hearing to determine whether to accelerate the loan and/or enforce a lien on the borrower's interest in property:

§216. Insurance by borrowers; acceleration of loans; lien and enforcement thereof.

. . . .

(b) Whenever the department has reason to believe that the borrower has violated any condition enumerated in paragraph (2),(4),(5), or (6) of section 215 of this Act, the department shall give due notice and afford an opportunity for a hearing to the borrower or the successor or successors to his interest, as the case demands. If upon such hearing the department finds that the borrower has violated the condition, the department may declare all principal and interest of the loan immediately due and payable notwithstanding any provision in the contract to the contrary.

. . . .

(d) The department may, subject to this Act and procedures established by rule, enforce any lien by declaring the borrower's interest in the property subject to the lien to be forfeited, any lease held by the borrower canceled, and shall thereupon order such leasehold premises vacated and the property subject to the lien surrendered within a reasonable time.

These provisions clearly demonstrate that where the lessee/borrower fails to comply with applicable rules, DHHL may accelerate the borrower's unpaid principal and interest, cancel the lease, and/or force the lessee/borrower to vacate the property.

The evidence demonstrates that Baker entered into a lease with DHHL. Baker further entered into a $27,000 farm loan with DHHL and agreed to assign to DHHL 30% of gross proceeds from the sale of crops. Baker failed to pay property taxes. Baker further failed to make monthly payments on the farm loan and as of August 20, 2006 was delinquent in the amount of $49,168.40.

Under these facts, we conclude that DHHL lawfully canceled the Lease for Baker's failure to comply with the HHCA applicable rules.

(2) Appellants argue that the hearing officer erroneously noted in his October 13, 2006 "Amended Findings of Fact Conclusions of Law and Recommended Order" (Recommended Order) that Baker "appeared at the April 6, 2006 hearing and refused to participate because he was under the impression that the hearing was being held before the Commission and not a hearing officer." Appellants allege that they, in fact, participated in the hearing by submitting evidence (an answer with supporting exhibits) and presenting two important points (one, a summary possession action had been filed by DHHL and two, Appellants had drafted a settlement proposal to resolve the loan dispute). Appellants contend the absence of any mention in the Recommended Order of their evidence or points violates HAR § 10-5-41(a). HAR § 10-5-41(a) provides that "[a]ll findings, conclusions and orders recommended by the hearing officer shall be based upon the whole record and supported by the reliable, probative and substantial evidence, including facts of which he may take official notice."

Appellants filed a timely exception to the Recommended Order, detailing their disagreement with the order. On November 20, 2006, the Commission held a hearing on the matter and approved and adopted the Recommended Order.

The Commission's December 15, 2006 "Findings of Fact, Conclusions of Law, Decision and Order" (2006 D&O), approving and adopting the Recommended Order, did not violate HAR § 10-5-41(a).[3] Appellants were permitted to submit evidence, and they did. The Commission need not provide a written assessment of every piece of evidence or testimony. In re Water Use Permit Applications, 94 Hawai'i 97, 163, 9 P.3d 409, 475 (2000) ("We [Hawai'i Supreme Court] do not demand from the Commission a written assessment of every piece of evidence or testimony."). The absence of written commentary on Appellants' submitted evidence does not invalidate the 2006 D&O under HAR § 10-5-41(a).

(3) Appellants contend the Deputy AGs intentionally, wilfully, and/or fraudulently misled Baker by representing that if he agreed to dismissal of the district court summary possession case, then there would be an informal resolution of the dispute. Appellants allege that this misrepresentation amounts to fraud and invokes the doctrine of unclean hands.

We disagree. Appellants point to no evidence to substantiate the claim that the Deputy AGs intentionally, wilfully, or fraudulently misled Baker into stipulating to the dismissal of the district court summary possession case.

The evidence demonstrates that in 1996 the Commission held a contested hearing addressing Baker's farm loan delinquency. The Commission issued its November 28, 1997 "Findings of Fact, Conclusions of Law, Decision and Order" (1997 D&O), permitting Baker to remain on his land as long as he complied with certain conditions. Because Baker did not comply

---

[3] Although Appellants direct their argument at the language in the Recommended Order, we discern that this argument also addresses similar language in the 2006 D&O.

with the conditions, the Lease was canceled pursuant to the terms of the 1997 D&O.

On May 4, 2005, DHHL filed a summary possession complaint against Baker. After filing a motion for summary judgment, DHHL could not find evidence that Baker had been served with the 1997 D&O. DHHL and Baker agreed to dismiss the district court case. Baker submitted a settlement proposal to Crowell on July 15, 2005, but received no response from Crowell.

Appellants claim that the Deputy AGs, specifically Crowell, made representations about resolving the dispute informally as a means of inducing Baker's assent to dismissal; however, Appellants point to no evidence in the record to support this claim.

The record does not support Appellants' claim that the Deputy AGs engaged in wilful, intentional, and/or fraudulent behavior, inducing Baker's detrimental reliance. See Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989) (noting that "[t]he evidence must be clear and convincing to support a finding of fraud").

(4) Appellants contend DHHL was not authorized to charge Baker 8-3/4% interest on his farm loan.

Baker entered into the farm loan contract with DHHL on July 7, 1982. Funds for this loan came from the "Hawaiian Home Farm Loan Fund," under the authority of and subject to the provisions of the HCCA. In 1982, portions of the HCCA were amended, including § 215.[4] 1982 Haw. Sess. Laws Act 274. Section 215(2) provided in relevant part:

> All unpaid balances of principal shall bear interest at the rate of two and one-half percent a year for loans made directly from the Hawaiian home loan fund, or at the rate of two and one-half percent or higher as established by law for other loans, payable periodically or upon demand by the department, as the department may determine.

---

[4] Only subsection (1) of § 215 was amended. 1982 Haw. Sess. Laws Act 274, § 3 at 709-10.

1982 Haw. Sess. Laws Act 274, § 3 at 709-10.[5]  Section 5 of Act 274 stated that "[t]his Act shall take effect upon its approval. (Approved June 18, 1982)."  1982 Haw. Sess. Laws Act 274, § 5 at 711.

Appellants argue that the 1982 amendments to § 215 were ineffective when Baker signed his farm loan contract with DHHL on July 7, 1982 because Congress had not consented to the amendments pursuant to § 4 of The Admission Act.[6]

The United States Congress approved the 1982 amendments on October 27, 1986:

> *Resolved by the Senate and House of Representatives of the United States of America in Congress Assembled*, That, as required by section 4 of the Act entitled "An Act to provide for the admission of the State of Hawaii into the Union," approved March 18, 1959 (73 Stat. 4), the United States hereby consents to all amendments to the Hawaiian Homes Commission Act, 1920, as amended, adopted between August 21, 1959, and June 30, 1985, by the State of Hawaii, either in the Constitution of the State of Hawaii or in the manner required for State legislation, except for Act 112 of 1981.

H.J. Res. 17, 99th Cong., 2d Sess., 100 Stat 3143 (1986).

---

[5]  The amendment to § 215(2) requiring that unpaid balances of principal bear interest at a rate of two and one-half percent per year or higher as established by law for loans not made directly from the Hawaiian home loan fund was originally enacted in 1976 by Act 72.  1976 Haw. Sess. Laws Act 72, § 2 at 97.

[6]  Section 4 provides in relevant part:

> §4.  As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act, 1920, as amended, shall be adopted as a provision of the Constitution of said State, as provided in section 7, subsection (b) of this Act, subject to amendment or repeal only with the consent of the United States, and in no other manner:  Provided, That (1) sections 202, 213, 219, 220, 222, 224, and 225 and other provisions relating to administration, and paragraph (2) of section 204, sections 206 and 212, and other provisions relating to the powers and duties of officers other than those charged with the administration of said Act, may be amended in the constitution, or in the manner required for State legislation, but the Hawaiian home-loan fund, the Hawaiian home-operating fund, and the Hawaiian home-development fund shall not be reduced or impaired by any such amendment, whether made in the constitution or in the manner required for State Legislation[.]

The Admission Act § 4, 1 HRS at 136 (2009 Repl.).

We conclude, however, that the 1982 amendments were effective on the date of approval: June 18, 1982. Congress's consent in 1986 relates back and retroactively applies to the date of approval in 1982.[7] Therefore, DHHL lawfully charged Baker 8-3/4% interest on his farm loan under the HHCA.

(5) Appellants claim Baker had no notice that Appellees required strict performance of the contract terms or that his debt would be accelerated.

Baker had notice that Appellees intended to require strict performance of the contract terms. On April 29 and August 26, 1996, contested case hearings were held regarding Baker's loan delinquency. As a result of these hearings, the Commission, in its 1997 D&O, found that Baker had failed to make payments according to the terms and conditions of his farm loan and therefore was in default. The Commission declared Baker's interest on Lot 185 forfeited and his farm loan canceled unless Baker made amends as specified in the Commission's 1997 D&O. DHHL mailed a copy of the 1997 D&O to Baker on November 28, 1997, certified mail, return receipt requested.

On August 15, 2006, Baker again received notice of a contested case hearing to be held on September 21, 2006 "to show cause why [Baker's] lease should not be canceled." The hearing officer concluded that Baker was delinquent on payments and therefore in default on his farm loan. The hearing officer recommended that Baker's interest in Lot 185 be forfeited and his lease canceled. Baker was present at this hearing.

Baker had notice that his loan would be accelerated. HHCA § 216(b), supra, permits DHHL to accelerate loans when borrowers violate certain terms of § 215 as long as due process is afforded the borrower. Baker was afforded due notice and an

---

[7] The same applies to Act 72, which took effect on May 10, 1976.

9

opportunity to be heard.  Moreover, Baker agreed to pay the 8-3/4% interest rate when he signed the loan agreement and accepted the loan proceeds on that basis.

(6)  Finally, any other point, question, or argument raised by Appellants is without merit.

Therefore,

The Judgment filed on November 7, 2008 in the Circuit Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawai'i, August 27, 2010.

On the briefs:

Frederick H. K. Baker, Jr.
and Haunani Y. Baker,
Appellants-Appellants pro se.

Clayton Lee Crowell and
Diane K. Taira,
Deputy Attorneys General,
for Appellees-Appellees.

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

Acting Associate Judge